TAYLOR, Judge.
The appellant, Paul Brown, was convicted of mui’der. See § 13A-6-2, Code of Alabama. He was sentenced to 50 years in prison. The appellant’s motion for a new trial was denied, and the appellant now appeals.
The state’s evidence tended to show that the body of the victim, Tommy Roden, was found wrapped in a bloody sheet in the back of a pickup truck that had been parked behind an old, burned-out trailer.
A foi'ensics official testified that the victim’s death was caused by bleeding, shock, and hemorrhage, brought on by gunshot wounds and knife wounds. The victim had been shot once in the mouth and once in the abdomen. He had been stabbed once in the abdomen and once in the neck.
Roger Phillips, a prosecution witness, testified that the victim was killed on March 2, 1990, in Phillips’s house. He testified that on the day of the killing, there were several people present in his house — Edwin Hartline, Tammy Jackson, Rita and Herby Kirby, the appellant, Eddie Glider, himself, and the victim Tommy Roden. Phillips testified that all of them except the victim and Grider had been at his house drinking alcohol since about 11:00 a.m.[1]
Edwin Hartline testified that Roden arrived at Phillips’s house between 3:00 p.m. *311 and 5:00 p.m. He testified that everyone in the house was drunk when the victim arrived. Hartline further testified that the appellant and Herby Kirby had had a fight just before Roden’s arrival. He said that he and Tammy Jackson left the house around 5:00 p.m. and did not return until approximately 9:00 p.m.
Phillips testified that the Kirbys left the house soon after Hartline and Jackson, leaving the appellant, the victim, and Phillips in the house. Phillips stated that he went into his living room and fell asleep, but was awakened by loud talking and “bumping noises” in his kitchen. He testified that he got up and went into the kitchen, where he found the appellant, Grider, and the victim. Phillips said that he returned to the living room and went back to sleep, only to be'awakened a second time by the sound of a gunshot. He heard the appellant say, “He ain’t dead yet,” and then he heard a second gunshot. Phillips testified that he could see the victim’s feet and some blood on the kitchen floor from where he was seated in the living room. He said that he saw Grider standing in the kitchen holding a bloody knife. According to Phillips, the appellant and Grider carried the victim’s body out of the back of the house and placed it in the bed of the victim’s truck. Grider asked Phillips to help them get the body into the truck bed because the victim’s foot had gotten hung on the tailgate. Phillips testified that the appellant came back into the house and got a sheet to cover the victim and then left the house driving the victim’s truck with Grider following in another vehicle. The appellant and Grider told Phillips that they were going to dispose of the body. Phillips said that he cleaned up the blood in the kitchen with some towels, and that he then burned the towels in his backyard.
Hartline also testified that he and Jackson returned to Phillips’s house around 9:00 p.m. He said that he noticed a fire in Phillips’s backyard. He said that when he entered the house, he noticed a table turned upside down and water, blood, and ashes on the kitchen floor. According to Hartline, Phillips appeared highly intoxicated and Grider appeared “weary and jittery.” Hartline testified that Grider left soon after Hartline arrived, saying, “Fm getting the hell out of here.”
The appellant gave a statement to Sergeant Mike Boan of the Alabama Bureau of Investigation, which was received in evidence at trial. The appellant’s statement was consistent with Phillips’s testimony up to the point where he and Kirby got into a fight. According to the appellant; after his fight with Kirby, he went into the living room and went to sleep. He said he did not wake up until the next morning.
At the end of the defense’s ease-in-chief, the court called Eddie Grider to testify. On direct examination by the court, Grider testified that Roger Phillips and the victim had gotten into a fight on the afternoon of March 2. Grider said that only Phillips, the appellant, the victim, and he were present in the house when the fight occurred. Grider testified that after the fight Phillips told the appellant to “take care of him,” referring to the victim, and that the appellant then shot the victim twice with a .22 caliber rifle, once in the abdomen and once in the mouth. Gri-der also testified that the appellant told him to “finish off’ the victim so he took a knife from a kitchen drawer and cut the victim’s throat. Then, according to Grider, Phillips got a sheet and the three men carried the victim’s body out to the truck. He testified that after he and the appellant returned from disposing of the body, Phillips cleaned up the blood on the kitchen floor, burned the towels in the backyard and gave him a ride to his sister’s house. Grider testified that he had disposed of the knife and gun used in the shooting.
A search of the appellant’s house and a search of Phillips’s house produced little evidence. Chief Investigator Charles Phillips of the Jackson County Sheriffs Department seized a pair of bloodstained jeans from the appellant’s house. The forensic laboratory could not identify the blood type, from the stains, but could identify the bloodstains as being caused by human blood. Roger Morrison of the Alabama Department of Forensic Sciences conducted the search of Phillips’s house. Morrison’s search revealed several bloodstains in different locations in the Phil *312 lips house, all of which were human blood, but only one of which was the same blood type as the victim.
I
The appellant initially contends that the trial court erred in denying his motion for a judgment of acquittal. Specifically, he contends that the state failed to present sufficient evidence that he committed the offense of murder.
Section 13A-6-2, Code of Alabama 1975, states:
“(a) A person commits the crime of murder if:
“(1) With intent to cause the death of another person, he causes the death of that person or of another person.... ”
The appellant moved for a judgment of acquittal at the end of the state’s case-in-chief. “The action of the trial court in denying a motion for a judgment of acquittal ... must be reviewed by determining whether, at the time the motion was made, there existed legal evidence before the jury, from which the jury by fair inference could find the defendant guilty.” Willis v. State, 447 So.2d 199, 201 (Ala.Cr.App.1983); Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). “Because the appellant made a motion for a [judgment] of acquittal at the close of the State’s case-in-chief, this Court cannot consider the evidence presented by the State in its case on rebuttal.” Nguyen v. State, 580 So.2d 122, 123 (Ala.Cr.App.1991).
The state presented direct and circumstantial evidence. There was testimony that the appellant was present in the kitchen when the victim was killed. There was testimony that the appellant said, “He ain’t dead yet” after the initial gunshot and that immediately thereafter there was a second gunshot. There was eyewitness testimony that the appellant was present with Eddie Grider in the kitchen where the victim was killed and that Grider was holding a bloody knife. The appellant was also seen carrying the body of the victim out of the house and loading it into a truck.
The state also presented testimony from Dr. Embry, a coroner’s pathologist for the Alabama Department of Forensic Sciences, who performed a autopsy on the victim’s body. Dr. Embry testified that the victim had bled to death as the result of gunshot wounds and stab wounds.
Section 13A-2-23, Code of Alabama 1975, states:
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
“(1) He procures, induces or causes such other person to commit the offense; or
“(2) He aids or' abets such other person in committing the offense.... ”
There was sufficient evidence presented by the state for the jury to find that the appellant was guilty beyond a reasonable doubt either of committing the murder himself or of acting in concert with Grider in killing the victim. Thus, the circuit court did not err in denying the appellant’s motion for a judgment of acquittal and submitting the case to the jury.
A
The appellant also contends that the trial court erred in denying his motion for a judgment of acquittal made at the end of the trial. Specifically, the appellant contends that Phillips was an accomplice, and that the state failed to corroborate his testimony as is required by § 12-21-222, Code of Alabama 1975.
This issue was presented for the first time in the appellant’s motion for a new trial and thus was not timely. If a defendant does not object to the testimony of an accomplice, that issue is not preserved for appellate review. Moreover, the appellant did not request jury instructions on corroboration of accomplice testimony. Unless jury instructions are requested on the subject of accomplice testimony, absence of such an instruction is not an issue preserved for appellate review. Linville v. State, 634 So.2d 601 (Ala. Cr.App.1993).
*313 B
Further, the appellant contends that the trial court erred in denying his motion for a new trial, which included the argument that the state had failed to corroborate Grider’s testimony.
As stated above, the appellant did not preserve this issue for review. This was a matter to be raised during the trial proceedings. The appellant’s motion for a new trial was not the proper vehicle for raising this issue, because the appellant had neither objected to Grider’s testimony nor requested an instruction concerning accomplice testimony. Thomas v. State, [Ms. CR-91-1292, August 13, 1993] 1993 WL 304507 (Ala.Cr.App.1993). Even if all of the foregoing steps had been taken to preserve these issues, the appellant would not have prevailed on appeal. The evidence was sufficient to convict him without the testimony of Grider.
II
The appellant next contends that the trial court erred in denying his motion to call Tammy Jackson as a court’s witness. The appellant contends that Jackson had made a statement to a third party that she denied making and that he could elicit only through asking Jackson leading questions.
The record does not support a finding of error. The trial court stated that if the appellant demonstrated that Jackson exhibited hostility toward him, then he would be allowed to treat her as a hostile witness. The appellant did not request to examine Jackson on voir dire.
A
The appellant last contends that the trial court abused its discretion in calling Grider as a court’s witness after denying his motion to call Jackson as a court’s witness. The record shows the following:
“MR. DENSON [Defense counsel]: We have no objections whatsoever. We would welcome that. The Court will call him as the Court’s witness.”
The defendant cannot voice his agreement to a matter during trial and then assert error later. Bragg v. State, 518 So.2d 847, 850 (Ala.Cr.App.1987).
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.

. Phillips testified that Eddie Grider had visited his house earlier that morning, but that Grider had left before he and the rest of his guests had started drinking. Grider did not return to the house until later that day.