[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 576 
James Alexander Bradford was charged, in separate indictments, with criminal mischief in the first degree, a violation of § 13A-7-21(a)(1), Ala. Code 1975; trafficking in marijuana, a violation of § 13A-12-231 (1)(b), Ala. Code 1975; and reckless driving, a violation of § 32-5A-190(a), Ala. Code 1975. Following a jury trial, he was convicted of all three charges. The trial court sentenced Bradford to 20 years in prison for the trafficking conviction; that sentence was split and Bradford was ordered to serve 5 years in prison followed by 5 years on probation.[1] Bradford was sentenced to five years in prison for the criminal-mischief conviction; that sentence was split and Bradford was ordered to serve one year in prison followed by five years on probation. For the remaining conviction, Bradford was sentenced to one year in prison. The sentences were ordered to run concurrently.
 I.
Bradford contends that the trial court erred in denying his motion for a judgment of acquittal made at the conclusion of the State's case. When he made the motion, Bradford argued, in pertinent part, that the State had failed to establish a prima facie case of trafficking in marijuana because, according to Bradford, there was no evidence indicating that he had knowledge of the marijuana or that he exercised dominion and control or intended to exercise dominion and control over the marijuana. Thus, he claimed, the State failed to present evidence to connect him to the marijuana. On appeal Bradford challenges the sufficiency of the evidence, arguing that there was not sufficient circumstantial evidence from which the jury could have inferred that he had knowledge of the marijuana in the back of his brother's vehicle and, therefore, that he aided and abetted in trafficking that marijuana. *Page 577 
Officer Hyland Robinson of the Prichard Police Department testified that on August 29, 2002, he observed a Ford Expedition sport-utility vehicle with a suspicious temporary license tag, and that when he turned on his siren and lights to pull the Expedition over to investigate, the Expedition sped away. Officer Robinson stated that he could see the driver of the Expedition looking at him in the side mirrors. According to Officer Robinson, after several turns and an extended chase, the Expedition made a sudden left turn and struck a Cadillac automobile, which, in turn, rammed Officer Robinson's squad car.
According to Officer Robinson, after the collision with the Cadillac, he backed up and continued the pursuit. Officer Robinson testified that the Cadillac followed him, struck his police car on the passenger side of the car, and then turned away. According to Officer Robinson, after numerous changes of direction, he again saw the Cadillac waiting on the side of the road. Officer Robinson stated that the Cadillac pulled out and rammed him again. According to Officer Robinson, the Cadillac continued following and ramming him until, on approximately the fifth collision, the Cadillac knocked his police car up onto the curb and essentially disabled his police car.
According to Officer Robinson, after the final collision, the Cadillac was also effectively stopped because of the damage it had sustained and by additional police cars that had joined the chase and surrounded the Cadillac. Officer Robinson stated that he provided other officers with the description and general location of the Expedition and that those officers located and eventually stopped the Expedition. Officer Robinson stated that his part in the chase lasted over 20 minutes and that he reached speeds of more than 50 miles per hour in residential areas where the posted speed limit was 25 miles per hour, and 70 miles per hour in areas where the posted speed limit was 35 miles per hour.
According to Officer Robinson, he noticed the driver of the Cadillac talking on his cellular telephone during the chase, and the driver of the Cadillac was still on his cellular phone even after his car had been surrounded by police vehicles and he was ordered out of his car by officers. Officer Robinson further stated at trial that the Cadillac had been directly behind the Expedition when he initiated the pursuit.
Captain Eddie Ragland testified that he joined the chase after it had began and that he noticed a brown Cadillac with heavy damage passing in the opposite direction of Officer Robinson's vehicle and the Expedition. Captain Ragland stated that he stopped and took up an observation point. Captain Ragland further testified that, after hearing dialogue on the police radio, he saw the Expedition drive past him, at which time he began pursuing the Expedition. According to Captain Ragland, the driver of the Expedition was on his cellular telephone while he was pursuing the Expedition. Captain Ragland stated that he noticed the driver's door of the Expedition open several times during the chase, so he performed a "pit maneuver," i.e., he struck the Expedition with his squad car and forced the Expedition to stop. (R. 102.) According to Captain Ragland, after a short pursuit on foot, he and other officers caught the driver of the Expedition, whom he identified at trial as Courtney Bradford.
The evidence further indicated that officers discovered approximately 154 pounds of marijuana in the back of the Expedition.
Bradford testified that he and his brother, Courtney, did not live or work together and did not generally associate with the same people. According to Bradford, on *Page 578 
the day this incident occurred, Courtney telephoned him and told him that he needed help. Bradford testified that he drove to the location Courtney described. Bradford stated that he saw Courtney and a police car coming toward him and that, in the process of swerving to avoid hitting his brother or the police car head-on, he struck a tree with his Cadillac. According to Bradford, he backed up and began following the police car and his brother's automobile, at which time he accidentally struck a police car. Bradford denied any knowledge of the marijuana in the Expedition. Bradford stated that he was scared for his brother's life and that he heard gunshots, both on the telephone when his brother called him and during his participation in the pursuit.[2]
 "Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis . . . is guilty of a felony, which felony shall be known as `trafficking in cannabis.' . . . If the quantity of cannabis involved:
 ". . . .
 "b. Is 100 pounds or more, but less than 500 pounds, the person shall be sentenced to a mandatory minimum term of imprisonment of five calendar years and to pay a fine of fifty thousand dollars ($50,000)."
Section 13A-12-231(1), Ala. Code 1975.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences there-from, and consider all evidence in a light most favorable to the prosecution.'" Ballanger v. State,720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v.State, 471 So.2d 485, 488 (Ala.Crim.App. 1984),aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v.State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quotingO'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State,557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parteBankston, 358 So.2d 1040, 1042 (Ala. 1978).
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 *Page 579 
F.2d 130 (5th Cir.1971); Clark v. United States,293 F.2d 445 (5th Cir.1961).
 "`[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "`"Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words, "`"`. . . the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.' Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied)."
 "`The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.' McGlamory, 441 F.2d at 135 and 136."
Cumbo v. State, 368 So.2d 871, 874-75
(Ala.Crim.App. 1978).
Although the marijuana was found in the Expedition and not the Cadillac Bradford was driving, it is well-settled that a person present and aiding and abetting in the commission of a crime is guilty as a principal and punishable equally with the perpetrator of the crime.
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense. . . ."
§ 13A-2-23, Ala. Code 1975. Further,
 "[t]he words `aid and abet' encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936 (Ala.Crim.App. 1986)]; Sanders v. State, 423 So.2d 348
(Ala.Crim.App. 1982). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. `The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented.' Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App. 1979), cert. denied, Ex parte Walls, 378 So.2d 1193
(Ala. 1980). Such facts as the defendant's presence in connection with his companionship, and his conduct at, before, and after the commission of the act, are potent circumstances from which participation may be inferred. Sanders v. State, supra; Smith v. State, 57 Ala.App. 151, *Page 580 326 So.2d 680 (1975), cert. denied, 295 Ala. 419, 326 So.2d 686 (1976)."
Henry v. State, 555 So.2d 768, 769
(Ala.Crim.App. 1989). Additionally,
 "[a]ny word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal. No particular acts are necessary to make one an aider and abettor. . . ."
Scott v. State, 374 So.2d 316, 318-19 (Ala. 1979) (citation omitted). Finally,
 "`[w]here the evidence is conflicting as to the defendant's connection as an accomplice or co-conspirator, a jury question is presented.' Sanders v. State, [423 So.2d 348
(Ala.Crim.App. 1982)], citing Watkins v. State, 357 So.2d 156, 160 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161 ([Ala.]1978)."
Henry, 555 So.2d at 770.
From the evidence, the jury could have concluded that Bradford and Courtney were traveling in tandem when Officer Robinson observed the suspicious tag on Courtney's vehicle and attempted to initiate a traffic stop to investigate. There was evidence from which the jury could have concluded that Courtney telephoned Bradford to update him on his location in the pursuit and that Bradford attempted to assist Courtney in evading the police by repeatedly ramming Officer Robinson's police car. Finally, the jury could have inferred from the testimony regarding Bradford's conduct and actions that he knew the marijuana was in the back of the Expedition. Thus, there was evidence from which the jury could have reasonably concluded that Bradford knowingly aided and abetted Courtney in the trafficking of marijuana. Therefore, the trial court's denial of Bradford's motion for a judgment of acquittal was proper, and Bradford is not entitled to any relief on this claim.
 II.
Bradford further avers that the trial court erred in denying his motion for a new trial. Specifically, Bradford argues:
 "Following his conviction, Bradford filed a motion for new trial (C-82) based on the affidavit of Courtney Bradford (C-84) in which Courtney Bradford stated that James Bradford had no knowledge of the marijuana in the back of [Courtney's] vehicle, that he had nothing to do with it, and that Courtney Bradford alone was responsible for it. The affidavit and motion state that Courtney Bradford entered a guilty plea on the day of James Bradford's trial and that he did not testify because he was advised not to do so by his lawyer. After taking testimony at a hearing on the motion, the trial court denied the motion.
 "The decision of a trial court on a motion for new trial alleging newly discovered evidence will not be reversed on appeal absent an abuse of discretion. Banks v. State, 845 So.2d 9 (Ala.Cr.App. 2002). Bradford submits the trial court abused its discretion in denying the motion. Courtney Bradford was not available as a witness due to his exercise of his Fifth Amendment rights. His testimony would have had a substantial impact on the trial, and the outcome would likely have been different on the trafficking in marijuana charge. The trial court erred in denying the motion."
(Bradford's brief at p. 20.)
We note that
 "[I]n order to establish the necessity for a new trial based on newly discovered evidence, the appellant must prove: (1) *Page 581 
that the evidence was discovered after the trial; (2) that the evidence could not have been discovered prior to trial by due diligence on the part of the movant; (3) that the evidence is material to the issue of the appellant's guilt; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would probably change the outcome if a new trial was granted."
Gillespie v. State, 644 So.2d 1284, 1289
(Ala.Crim.App. 1994).
Here, Bradford obviously knew of the existence of Courtney's involvement in the drug-trafficking enterprise; further, Bradford knew whether he himself was also involved in the trafficking enterprise with Courtney. Thus, this evidence is more accurately characterized as "newly disclosed evidence" rather than "newly discovered evidence." See Travis v.State, 776 So.2d 819, 845-47 (Ala.Crim.App. 1997) (ruling that the defendant's knowledge about his involvement in the murder revealed that his "newly discovered evidence" — a codefendant's confession to the crime — amounted only to "newly disclosed evidence"). Further, "[a] motion for new trial should not be granted to call a witness who refused to testify in the original trial." Stout v. State, 547 So.2d 894,898 (Ala.Crim.App. 1988). Therefore, the trial court did not abuse its discretion in denying Bradford's motion for a new trial.
 III.
Finally, Bradford argues that his one-year sentence for reckless driving exceeded the statutory maximum for a conviction for reckless driving.
The indictment charging Bradford with reckless driving alleged that Bradford
 "did operate a motor vehicle carelessly and heedlessly and in willful and wanton disregard for the rights or safety of other persons or property, to-wit: intentionally rammed the vehicle of a police officer, in violation of § 32-5A-190 of the Code of Alabama. . . ."
(C. 18.) The offense of reckless driving is set out in §32-5A-190, Ala. Code 1975, as follows:
 "(a) Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.
 "(b) Every person convicted of reckless driving shall be punished upon a first conviction by imprisonment for a period of not less than five days nor more than 90 days, or by fine of not less than $25.00 nor more than $500.00, or by both such fine and imprisonment, and on a second or subsequent conviction shall be punished by imprisonment for not less than 10 days nor more than six months, or by a fine of not less than $50.00 nor more than $500.00, or by both such fine and imprisonment. . . ."
It is clear from the record that Bradford was sentenced to one year in prison for his conviction in case no. CC-03-487. Although we agree that this sentence exceeds the statutory maximum punishment for reckless driving, we must first determine what offense Bradford was actually convicted of committing.
As is noted above, the indictment clearly charged Bradford with reckless driving, a violation of § 32-5A-190. However, we note that, without objection from Bradford, throughout the course of the trial the trial court referred to the charge against Bradford as reckless endangerment, which is a violation of § 13A-6-24, Ala. Code 1975. Further, the case action summary *Page 582 
lists the charge as reckless endangerment rather than reckless driving. Similarly, the verdict form reads as follows: "We, the jury, find the defendant James Alexander Bradford guilty of the offense of Reckless Endangerment, as charged in the indictment." (C. 19.) Finally, we note that the characterization of the offense as reckless endangerment was not limited to the trial court; defense counsel too referred to the offense as reckless endangerment.
In Tinker v. State, 932 So.2d 168
(Ala.Crim.App. 2005), this Court reversed a conviction where the appellant was indicted for conspiracy to commit trafficking, but the jury verdict form omitted any reference to conspiracy and, instead, provided the jury was to find Tinker either "`guilty of trafficking cocaine, as charged in count one of the indictment'" or "`not guilty of trafficking cocaine, as charged in count one of the indictment.'" Tinker, 932 So.2d at 177. InTinker, the appellant was alleged to have conspired with others to sell cocaine, but there were no allegations that he had actually trafficked in cocaine. This Court noted that the trial court's jury instructions on conspiracy to traffic in cocaine contained an instruction regarding the offense of trafficking in cocaine to assist the jury in determining whether Tinker had conspired to traffic in cocaine. We stated, however, that it was "conceivable that a layperson on the jury could have easily construed the instructions as requiring the jury to determine whether Tinker was guilty of trafficking in cocaine."Id. at 177. Thus, we concluded that under the facts ofthat case, it was unclear whether the jury intended its verdict to be a finding that Tinker had conspired to traffic in cocaine, as charged in the indictment, or a finding that he had actually trafficked in cocaine, an offense for which he had not been charged and was not a lesser-included offense under the circumstances of his case.
Here, however, unlike in Tinker, the jury's intent is clear from the record. The trial court's oral instructions to the jury were, in pertinent part, as follows:
 "[Bradford] is also charged with the offense of reckless endangerment. A person commits the crime of reckless endangerment in the State of Alabama if a person drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights of safety of another person and without due caution and circum — circumspection and at a speed or a manner so as to endanger or be likely to endanger any person or property. If a person commits these particular acts, they shall be guilty of reckless endangerment.
 "If you find that the State has proved each of the above elements of the offense of reckless endangerment, then you shall find [Bradford] guilty of reckless endangerment. If you find that the State has failed to prove any one or more of the elements of reckless endangerment, then you cannot find [Bradford] guilty of reckless endangerment."
(R. 186-87.)
The jury was never instructed on the elements of reckless endangerment, as set out in § 13A-6-24, Ala. Code 1975, which provides that "[a] person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Rather, the jury was instructed only on the elements
that constitute the offense of reckless driving, i.e., the offense for which Bradford was indicted. Thus, the erroneous reference on the verdict form to the charge as reckless endangerment does not draw the jury's intent into question, because the jury could not have found Bradford guilty of an offense as to whose elements it had not been *Page 583 
instructed. Clearly, the jury in this case found Bradford guilty of violating § 32-5A-190, Ala. Code 1975, because those were the only elements given in that charge.
Thus, having determined that Bradford was convicted of reckless driving, a violation of § 32-5A-190, as charged in the indictment, we agree with his contention that his one-year sentence is illegal. Therefore, this case is due to be remanded for the trial court to resentence Bradford for his reckless-driving conviction to a sentence within the statutory range of punishment for that offense. The case action summary and the sentencing order should be amended to reflect the correct charge. Due return should be filed with this Court no later than 28 days from the date of this opinion.
REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] Bradford was also ordered to pay a $50,000 fine pursuant to § 13A-12-231(a)(2), a $1,000 drug fine pursuant to §13A-12-281, and a $ 100 fine for deposit into the Alabama Forensic Services Trust Fund pursuant to § 36-18-7(a), Ala. Code 1975.
[2] Officer Robinson stated that he did not hear any gunshots until after his and Bradford's automobiles had been disabled by Bradford's repeated ramming of his police car. Captain Ragland testified that he heard gunshots sometime after he arrived in the area but before joining in the pursuit of the Expedition.
* Note from the reporter of decisions: On April 21, 2006, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On June 23, 2006, that court denied rehearing, without opinion. On August 11, 2006, the Supreme Court denied certiorari review, without opinion (1051378).