KELLUM, Judge.
Delinquency petitions were filed in the Juvenile Court of Jefferson County, charging the appellant, B.H., a 16-year-old male, with 6 counts of unlawful breaking and entering a vehicle, violations of § 13A-8-11, Ala.Code 1975, and 2 counts of first-degree theft of property, violations of § 13A-8-3, Ala.Code 1975. The juvenile court found four of the six charges of unlawful breaking and entering a vehicle to be true, both charges of first-degree theft to be true, and adjudicated B.H. delinquent. The juvenile court issued a written order remanding B.H. to the custody of the Alabama Department of Youth Services. This appeal followed.
The evidence presented at trial established the following pertinent facts. On July 19, 2010, Officer Richard Haluska, an officer with the City of Birmingham Police Department (“BPD”), received a dispatch around midnight advising him that five young black males had just been seen getting out of a silver Pontiac Grand Am automobile parked on Haygood Street in Birmingham. Officer Haluska located the Grand Am on Haygood Street, noted that there was no damage to the vehicle, recorded the license-plate number, ran the vehicle-identification number (“VIN”), and learned that the vehicle had not been reported stolen. On the morning of July 20, 2010, Officer Haluska, who was then off duty, saw the silver Grand Am pull up to a four-way stop at the intersection of Red Mill Road and Lawson Road in Birmingham. At that point, the Grand Am had been reported stolen.
As Officer Haluska began to follow the Grand Am in his personal vehicle, a black Ford Fusion automobile cut him off and pulled behind the Grand Am. Officer Ha-luska radioed the police dispatcher, informing dispatch that he was following the Grand Am that he had observed earlier. Officer Haluska also reported the license-plate number of the Ford Fusion directly in front of him. The Ford Fusion had not been reported stolen at the time, but another police unit was searching for the stolen Grand Am when Officer Haluska notified the police dispatcher. Officer Ha-luska testified that he was able to see the driver of the Ford Fusion while the vehicles were stopped at the intersection, and at trial he identified B.H. as the driver of the Ford Fusion. Officer Haluska ex *749 plained that he eventually positioned himself between the Ford Fusion and the Grand Am as the three cars drove away. In the process, Officer Haluska pulled aside the Ford Fusion, at which time he had another opportunity to look at the driver and the front-seat passenger. After a short while, the Ford Fusion sped off and Officer Haluska continued to follow the Grand Am. Eventually, a marked police car arrived on the scene, and the Grand Am attempted to flee but wrecked in the process.
While he was assisting the officers in detaining the suspect in the Grand Am, Officer Haluska saw B.H. and three other young black males walking down the street. Officer Haluska recognized B.H. and one of the other males as the driver and the front-seat passenger in the Ford Fusion. Officer Haluska testified that approximately seven minutes had elapsed between his last seeing the Ford Fusion and his observing the young men walk toward the scene of the accident. During that time, Officer Haluska had learned that the Ford Fusion had also been stolen. The officers found the Ford Fusion in the parking lot of a church approximately three quarters of a mile to one mile from the scene of the accident.
BPD Detective Cedric Thomas testified that he took statements from four of the five defendants apprehended in connection with the car thefts and break-ins; only B.H. declined to make a statement. Detective Thomas also took statements from the victims in this case and explained that it was his understanding that no defendant had the permission of any owner to enter the owner’s vehicle. Detective Thomas testified that mainly electronic devices were taken from the vehicles, including global-positioning-system (“GPS”) devices, portable music devices (e.g., an iPod), and laptop computers. Detective Thomas also testified that no forensic examinations, such as fingerprinting or DNA analysis, were conducted in connection with the break-ins.
Nissalke Pulliam testified that she lived on Camilla Road in Birmingham and that her 1999 GMC Suburban KC-10 sport-utility vehicle was broken into on the night of July 19, 2010, or in the early morning of July 20, 2010. Two full bottles of Gatorade sports drink were taken from Pul-liam’s vehicle. After Pulliam telephoned police to report the break-in, she drove around her neighborhood. Pulliam saw a group of young men, four to six in number, walking around the neighborhood. Pul-liam believed that they had just finished playing basketball. Pulliam also testified that she did not know B.H. and had never seen him before trial.
Susan Riggins testified that she lived on Dogwood Lane in Birmingham and that her 1999 Lexus RX-300 sport-utility vehicle was broken into on the night of July 19, 2010. Riggins explained that a DVD player, a Bible, and a Bible cover were all taken from the vehicle. Riggins also testified that she had never seen B.H. before trial and that she did not see him near her vehicle on the night in question.
Clifford Burns testified that he lived on Freda Jane Lane in Birmingham and that his 2000 Pontiac Grand Am was stolen from the driveway of his house on the night of July 19, 2010. Burns did not see who stole the vehicle. Burns also testified that he did not know B.H. and that he had never given B.H. permission to take his vehicle.
Chad Hill testified that he lived on Regal Avenue in Birmingham and that his company vehicle, a black 2010 Ford Fusion, was stolen on the night of July 19, 2010. Hill testified that he did not see who stole his car, that he had never seen *750 B.H. before trial, and that he had never given B.H. permission to take his vehicle.
J.H. testified that he was with B.H. on the night of July 19 and 20, 2010, and that he was involved with a number of vehicle break-ins and thefts that evening. J.H. testified that B.H. picked him up from his house in a silver vehicle and explained that he, B.H., and two other boys, C.H. and W.H., were driving around the neighborhood looking for vehicles to “pull on” — i.e., break into — or steal. J.H. explained that they broke into approximately 8 or 9 cars in the Sunrise East neighborhood of the Center Point area of Birmingham, that B.H. was present the entire time, and that B.H. broke into some of the vehicles. J.H. claimed that at times the boys broke up into pairs or individually went and “pulled on” vehicles, but he was aware the others were breaking into other vehicles when they were not present. J.H. testified that he stole only an “mp3 player”[1] from one of the vehicles. J.H. admitted that he broke into the Ford Fusion, found the keys, and stole the vehicle.
J.H. testified that he was hanging out with B.H., C.H., and W.H. when D.T. wrecked the Grand Am, the same car J.H. said B.H. was driving when J.H. was picked up earlier in the evening. According to J.H., the four had gone to a store and were hanging out near an abandoned house at the time D.T. wrecked the Grand Am. J.H. testified that he had not been with B.H. immediately before he, B.H., C.H., and W.H. went to the store. J.H. explained that B.H. never drove “the black car” — i.e., the Ford Fusion. J.H. also testified that W.H. told him that the silver Pontiac Grand Am was stolen and that B.H. was present for this conversation.
C.H., one of the boys involved in the break-ins and thefts, also testified at trial. C.H. testified that B.H. did not drive the silver Pontiac Grand Am but that B.H. did drive the black Ford Fusion. C.H. explained that he, B.H., J.H., D.T., and W.H. all pulled on vehicle doors on the night in question, and he said that he himself pulled on about six car doors. C.H. testified that the five of them were together when D.T. pulled on the door of the silver Pontiac Grand Am and found the keys. C.H. also testified that D.T. drove the silver Pontiac Grand Am and that B.H. rode with him, but he also explained that the five of them, including B.H., took turns driving the vehicle. C.H. explained that they stole an iPod and a Dell brand laptop computer from the vehicles. C.H. explained that he, B.H., W.H., and D.T. were present when they found the Grand Am on Freda Jane Lane and stole it. C.H. reiterated that B.H. and every young man involved took turns driving the Grand Am.
C.H. remembered “pulling on” a 2005 Toyota Highlander and that B.H. was with them at that point. C.H. also remembered “pulling on” a 1999 GMC K-1500 truck, but he stated that B.H. was with D.T. at that point in time. C.H. recalled “pulling on” a 2003 Chevrolet Tahoe, but he explained that B.H. had gone home at that point. C.H. testified that he did not recall “pulling on” a 1999 Lexus RX-300, a 2000 Ford F-350 truck, or a 2009 GMC Yukon. C.H. did see B.H. driving the black Ford Fusion that night.
At the close of the State’s case, B.H. made a motion for a judgment of acquittal in the cases asserting unlawful breaking and entering a vehicle — case no. JU-10-52026, involving the 2004 Ford F-350 truck; case no. JU-10-52041, involving the 2009 GMC Yukon; case no. JU-10-51918, involving the 2005 Toyota Highlander; case no. JU-10-51909, involving the 2003 *751 Chevrolet Tahoe; case no. JU-10-51912; and case no. JU-10-51911. Specifically, B.H. argued that the State failed to present any evidence that any crime was committed as to those vehicles. B.H. made the same motion regarding the theft charges. The court granted the motions for a judgment of acquittal in case no. JU-10-52026, involving the Ford F-350, and case no. JU-10-51911.[2]
After B.H. rested and both sides gave closing arguments, the juvenile court found to be true the four remaining unlawful-breaking-and-entering-a-vehicle charges — i.e., those involving the Chevrolet Tahoe, the GMC Yukon, the Toyota Highlander, and the Lexus RX-300 — and also found to be true the two counts of first-degree theft of the Ford Fusion and the Pontiac Grand Am. This appeal ensued.
I.
On appeal, B.H. raises various claims regarding the denial of his motion for a judgment of acquittal with respect to the four remaining charges of unlawful breaking and entering a vehicle involving the 2003 Chevrolet Tahoe, the 2005 Toyota Highlander, the 1999 Lexus RX-300, and the 2009 GMC Yukon.
“Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).”
Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). See R.L.L. v. State, 564 So.2d 474, 476 (Ala.Crim.App.1990); C.D.U. v. State, 552 So.2d 178, 180 (Ala.Crim.App.1989) (“When evidence is presented ore tenus, the court’s decision must be given every reasonable presumption and we will not overturn its finding ‘if it was supported by credible evidence unless it was palpably wrong.’ Department of Human Resources v. Middleton, 519 So.2d 540 (Ala.Civ.App.1987).”).
“ ‘Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based on competent, material[,] and relevant evidence.” The credibility of witnesses and the truthfulness of testimony in delinquency proceedings is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Crim.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.’”
R.B.H. v. State, 762 So.2d 382, 383 (Ala.Crim.App.1999), quoting A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995).
Section 13A-8-11, Ala.Code 1975, provides, in relevant part:
“(b) A person commits the crime of unlawful breaking and entering a vehicle if, without, the consent of the owner, he breaks into and enters a vehicle or any part of a vehicle with *752 the intent to commit a felony or theft. For the purposes of this section, ‘enters’ mean to intrude:
“(1) Any part of the body; or
“(2) any physical object connected with the body.”
Under current Alabama law, there is no distinction between principals and accessories. See, e.g., Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985) (“Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama”). As we noted in Peraita v. State, 897 So.2d 1161 (Ala.Crim.App.2003):
“Alabama’s accomplice liability statute provides:
“ ‘A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
“ ‘(2) He aids or abets such other person in committing the offense.... ’
“§ 13A-2-23, Ala.Code 1975.
‘“The words “aid and abet” encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936 (Ala.Crim.App.1986)]; Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. “The jury is to determine whether the appellant’s participation exists and the extent of it from the conduct of the parties and all the testimony presented.” Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App.1979), cert. denied, Ex parte Walls, 378 So.2d 1193 (Ala.1980). Such facts as the defendant’s presence in connection with his companionship, and his conduct at, before and after the commission of the act, are potent circumstances from which participation may be inferred.’
“Henry v. State, 555 So.2d 768, 769 (Ala.Crim.App.1989).
“ ‘Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal.... No particular acts are necessary to make one an aider and abettor; the common enterprise or adventure may have been entered into on the spur of the moment without prearrangement or participation.’
“Scott v. State, 374 So.2d 316, 318-19 (Ala.1979).”
897 So.2d at 1210.
With these principles in mind, we turn to B.H.’s various challenges to the sufficiency of the State’s unlawful-breaking- and-entering-a-vehicle cases.
A.
B.H. argues that the juvenile court erred in failing to grant his motion for a judgment of acquittal with respect to the unlawful-breaking-and-entering-a-vehicle charges involving the 2003 Chevrolet Tahoe and the 2005 Toyota Highlander. Specifically, B.H. contends that no evidence was presented that either the Tahoe or the Highlander was broken into or that B.H. was present at the time either vehicle was broken into.
*753 At the close of the trial, the juvenile court found true the charges that B.H. had unlawfully broken into the Chevrolet Tahoe and the Toyota Highlander, and it explained:
“THE COURT: Just for the record, I was able to assess the testimony especially of the two codefendants in this case. And while I found a part of their testimony to be not credible, I did find a part to be very credible ... For the [unlawful-breaking-and-entering-a-vehicle charge] for the Chevy Tahoe, I’m finding it true based on the testimony that I heard from the codefendants. I think it’s pretty clear that the gentlemen while maybe not standing on top of each other right behind, right in front of or right beside each other the entire time were certainly acting in concert. So, as to the UBEV on the 2009 GMC Yukon, I’m finding it true. As to the UBEV on the 2005 Toyota, I’m finding it true. As to the [unlawful-breaking-and-entering-a-vehicle charge] on the '99 Lexus RX-300, I’m finding it true.”
(R. 87-88.)
Here, evidence was presented that B.H. was with both J.H. and C.H. along with two others on the night of July 19-20, 2010, and that they perpetrated a number of break-ins to vehicles in Birmingham. The juvenile court heard testimony from both J.H. and C.H. that B.H., as well as the others, “pulled on” vehicles that night. The juvenile court also heard testimony from J.H. and C.H. that B.H. drove both vehicles that were stolen on that night. C.H. also admitted that he remembered breaking into a Chevrolet Tahoe and a Toyota Highlander. C.H. specifically remembered B.H. being present for the break-in of the Toyota Highlander; however, C.H. stated that he did not recall B.H. being present when he broke into the Chevrolet Tahoe. It is apparent that the juvenile court did not clearly err in determining that B.H., J.H., C.H., and other young men were working in concert when they broke into vehicles in Birmingham on the night in question. Accordingly, the State presented sufficient evidence to support “true” verdicts for the delinquency petitions involving the unlawful breaking and entering of the 2003 Chevrolet Tahoe and the 2005 Toyota Highlander. Accordingly, the juvenile court did not err in denying B.H.’s motions for a judgment of acquittal as to those two charges.
B.
B.H. also argues on appeal that the State failed to present sufficient evidence tending to corroborate his accomplices’ statements regarding his involvement in the offenses. Specifically B.H. argues that the State failed to satisfy the requirements of § 12-21-222, Ala.Code 1975. At the conclusion of the State’s case, B.H. made a motion for judgment of acquittal on all charges. Counsel for B.H. argued:
“Also, further on these cases, I would ask that you grant a motion for judgment of acquittal on all eight cases because of the inconsistent statements, the lack of evidence, the lack of prima facie evidence. Just really the inconsistent statements. We can’t get any kind of consensus on any of these cases.”
(R. 86.)
B.H. did not raise the issue of corroboration of the accomplice testimony at any point during the trial or during the discussion of his motions for a judgment of acquittal. Rather, he raised this argument for the first time here on appeal. Therefore, it is not properly before this Court. See Marks v. State, 20 So.3d 166, 172 (Ala.Crim.App.2008) (holding that “a motion for a judgment of acquittal that challenges the sufficiency of the evidence only generally, i.e., that the State failed to *754 prove a prima facie case or words to that effect, does not preserve for review the specific claim that an accomplice’s testimony was not sufficiently corroborated”); Perkins v. State, 715 So.2d 888 (Ala.Crim.App.1997); and Brown v. State, 645 So.2d 309 (Ala.Crim.App.1994). .
Moreover, this Court has recognized that § 12-21-222 does not apply to juvenile adjudications. See, e.g., Ex parte T.B., 698 So.2d 127, 129 (Ala.1997) (“Because the clear language of § 12-21-222 limits its corroboration requirement to felony convictions, all other adjudications, including youthful offender adjudications, are excluded from its effect.”); Woodberry v. State, 497 So.2d 587 (Ala.Crim.App.1986) (“We are unwilling to impose the requirement of corroboration in a delinquency adjudication in view of the fact that such additional proof is neither required by statute nor by rule of the Supreme Court”) Thus, even if B.H. had presented this argument in a timely fashion, it would not have entitled him to any relief. Accordingly, the juvenile court did not err in denying his motion for judgment of acquittal on the ground that the State failed to corroborate J.H.’s and C.H.’s testimony.
C.
B.H. also argues that the juvenile court erred in failing to grant his motion for judgment of acquittal with respect to the charge of unlawfully breaking and entering the 1999 Lexus RX-300 sport-utility vehicle. Specifically, B.H. argued that although the owner of the Lexus testified that her vehicle was broken into on the evening in question, the State failed to present evidence that B.H. or one of his accomplices broke into the Lexus.
At trial, Susan Riggins testified that her 1999 Lexus RX-300 was broken into and that someone stole a DVD player, a Bible, and a Bible cover from her vehicle. She did not see who broke into her vehicle. C.H. testified that he did not remember “pulling on” a 1999 Lexus RX-300 on the night in question, but he did testify that he and his accomplices were looking to steal electronic devices from the vehicles they were breaking into. The break-in occurred in a neighborhood near to where two of the other break-ins took place.
In Bradford v. State, 948 So.2d 574 (Ala.Crim.App.2006), this Court explained:
“ ‘In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
“ ‘ “[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir.1967):
“ ‘ “ ‘Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis ex *755 cept guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 821 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry’s words, the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.” Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied).’
“ ‘ “The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.” McGlamory, 441 F.2d at 135 and 136.’ ”
948 So.2d at 578-79, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978).
Because this was a bench trial, we give substantial deference to the juvenile court’s weighing of the facts. Although C.H. said that he did not remember “pulling on” the 1999 Lexus RX-300, the juvenile court indicated that it did not believe portions of J.H.’s and C.H.’s testimony. Riggins testified that her Lexus was broken into on the night in question and that no one had permission to enter her vehicle. She also testified to seeing a group of young men who, she thought, looked as though they had just finished playing basketball. C.H. testified that he and the other young men had been playing basketball that night. C.H. also admitted that he and his accomplices were looking to steal electronic devices from the vehicles they broke into. Thus, we cannot say that the juvenile court’s adjudication as to this count was clearly erroneous. Accordingly, the juvenile court did not err by denying B.H.’s motion for a judgment of acquittal with respect to the charge of unlawfully breaking and entering the 1999 Lexus RX-300.
D.
B.H. also argues that the juvenile court erred in denying his motion for a judgment of acquittal as to the charge of unlawfully breaking and entering the 2009 GMC Yukon sport-utility vehicle. Specifically, B.H. contends that no witness claimed ownership of the Yukon and that neither he nor his accomplices admitted that they “pulled on” the Yukon on the night in question.
The State concedes that the juvenile court erred in denying B.H.’s motion for a judgment of acquittal with respect to this charge. As our Supreme Court noted in Hill v. State, 207 Ala. 444, 446, 93 So. 460, 461 (1922):
“In every criminal prosecution the burden is on the state to prove beyond a reasonable doubt that the crime charged has been in fact committed, and that the accused is the person who committed it. Winslow v. State, 76 Ala. 42, 47 [ (1884) ]; Smith v. State, 133 Ala. 145, 150, 31 So. 806, 91 Am.St.Rep. 21 [ (1902) ]; Perry v. State, 155 Ala. 93, 46 So. 470 [ (1908) ]; Sanders v. State, 167 Ala. 85, 52 So. 417, 28 L.R.A.(N.S.), 536 [(1910)].”
After reviewing the record, we find that the State failed to present any evidence regarding this offense. No victim came forward to testify that he or she owned a 2009 GMC Yukon that was broken into on the night in question. Neither police officer mentioned anything about the Yukon. C.H. testified that he did not remember *756 “pulling on” any Yukon on the night in question. Thus, the State has failed to produce any evidence indicating that B.H. or his accomplices unlawfully broke into and entered a 2009 GMC Yukon. Accordingly, the juvenile court erred in failing to grant B.H.’s motion for a judgment of acquittal with respect to the charge of unlawfully breaking and entering the 2009 GMC Yukon.
II.
B.H. argues that the juvenile court erred in failing to grant his motion for a judgment of acquittal with respect to the first-degree theft charge involving the Pontiac Grand Am. Specifically, B.H. contends that the State presented only conflicting accomplice testimony regarding whether B.H. ever drove the Grand Am and, further, that none of the evidence presented by J.H. was corroborated in any form or fashion, as required by § 12-21-222.
With respect to B.H.’s claim that the State failed to present evidence tending to corroborate J.H.’s testimony that B.H. was driving the silver Grand Am when he picked up J.H., we note that B.H. presents this argument for the first time on appeal. Thus, as discussed in Part I.B., this claim is not properly before this Court for review. As was further discussed in Part I.B., even if B.H. had properly raised this issue at trial, he would not be entitled to any relief. See Ex parte T.B., 698 So.2d at 129.
In any event, the juvenile court heard ample evidence to support the conclusion that B.H. participated in the theft of the Grand Am. Clifford Burns testified that the silver Grand Am was stolen from his driveway on the night in question. J.H. testified that B.H. picked him up from his house in a silver car and later admitted that the silver car was, in fact, the silver Pontiac Grand Am. When the juvenile court questioned C.H. about how they came to steal the Grand Am, C.H. admitted that B.H. was present when the group found the keys to and stole the Grand Am. Additionally, although he originally testified that B.H. did not drive the Grand Am, C.H. admitted that all the young men drove the Grand Am. Furthermore, Officer Haluska’s description of the events surrounding his following the black Ford Fusion, which he testified was being driven by B.H., and the silver Grand Am, which he knew was stolen at the time he began to pursue it, gave rise to the inference that B.H. participated in, or was an accomplice to, the theft of the silver Grand Am. Thus, it is clear that the State presented ample evidence upon which the juvenile court could have found true the first-degree theft charge alleging that B.H. committed theft of the silver Pontiac Grand Am. Accordingly, the juvenile court did not err in denying B.H.’s motion for a judgment of acquittal on this charge.

Conclusion

Based on the foregoing, the judgment of the juvenile court is due to be, and is hereby, affirmed with respect to case no. JU-10-51909 (the unlawful breaking and entering of the 2008 Chevrolet Tahoe), case no. JU-10-51912 (the unlawful breaking and entering of the 1999 Lexus RX-300), case no. JU-10-51918 (the unlawful breaking and entering of the 2005 Toyota Highlander), and case no. JU-10-51915 (the first-degree theft of the 2000 Pontiac Grand Am). However, we reverse the adjudication of delinquency as to case no. JU-10-52041 (the unlawful breaking and entering of the 2009 GMC Yukon) due to the State’s failure to present evidence sufficient to support a finding of delinquency. Accordingly, this case is remanded for the juvenile court to vacate B.H.’s adjudication of delinquency in case no. JU-10-52041.
*757 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. An mp3 player is a personal music device.

. The record on appeal does not contain the delinquency petitions or attendant documents for either case no. JU-10-52026 or case no. JU-10-51911. The discussion at trial reveals that in case no. JU-10-52026 B.H. was charged with the unlawful breaking and entering of a 2004 Ford F-350 truck. However, the discussion at trial is not clear as to what vehicle was contemplated by the charge in case no. JU-10-51911.