JOINER, Judge.
G.V.C. was tried on a single-count indictment charging first-degree sexual abuse, see § 13A-6-66, Ala.Code 1975, and was subsequently convicted. G.V.C. now appeals, arguing that a discrepancy between the indictment and the jury-verdict form— along with the trial court’s subsequent correction of the verdict form — require reversal of his conviction. We affirm.
In November 2011, G.V.C. was tried by way of a single-count indictment charging first-degree sexual abuse; specifically, the indictment charged that G.V.C. “did knowingly subject M.S. to sexual contact, to-wit: by fondling her breast with [his] hands, while the said M.S. was incapable of giving consent by reason of [being] physically helpless.” (C. 21.) At the beginning of *669 jury selection, the trial court read the indictment charging first-degree sexual abuse to the jury. (R. 15.) Following jury selection, the trial court explained the trial process to the jury and again informed the jury that the sole issue was “sexual abuse in the first degree” where “the victim is incapable of consent”; likewise, the trial court advised the jury that it would be instructed on “beyond a reasonable doubt and sexual abuse in the first degree” at the conclusion of trial. (R. 39-40.)
During its opening statement, the State discussed the elements of “sex abuse in the first degree” and the evidence it intended to present in support of the charge. (R. 43.) Likewise, in closing, the State argued that it had “met all the elements in the case” and urged the jury to convict G.V.C. “of sex abuse in the first degree.” (R. 160.) Similarly, during his closing argument, G.V.C.’s attorney discussed “sex abuse.” (R. 174.)
At the conclusion of trial, the jury was charged on first-degree sexual abuse. Specifically, the trial court charged the jury as follows:
“I’m going to charge you as to what is sexual abuse in the first degree, which is what he’s charged with. And you remember I read the indictment to you at the first and this is what it is. A person commits the crime of sexual abuse in the first degree if he subjects another person to sexual contact who is incapable of consent by reason of being physically helpless. To convict the State must prove beyond a reasonable doubt each of the following elements of sexual abuse in the first degree; number one, that the Defendant [G.V.C.] subjected [M.S.] to sexual contact, and that'[M.S.] was incapable of consent by reason of being physically helpless, and the Defendant must have acted knowingly, intentionally.”
(R. 185-86.)
Following the jury instructions, the trial court addressed the verdict form the jury would use to announce its decision; before giving the form to the jury, the trial court explained the two options on the form, stating that “[t]he first one says we find the Defendant guilty of sexual abuse in the first degree as charged in the indictment and signed by the foreman or we find the Defendant not guilty signed by the foreman.” (R. 187.)
The record indicates, however, that the trial court’s description of the verdict form to the jury was inaccurate. The verdict form, in fact, had the following two options: “We, the jury, find the defendant [G.V.C.] GUILTY of Sexual Assault 1st Degree as charged in the indictment” (emphasis added) or “We, the jury, find the defendant [G.V.C.] NOT GUILTY.” (C. 22.) The form was returned by the jury and read by the foreman in open court. (C. 22.) The trial court subsequently polled and discharged the jury.
Later on that same day, the trial court— recognizing that the verdict form referenced “sexual assault 1st degree” and not first-degree sexual abuse — sua sponte entered an order setting a hearing to correct the verdict form. (C. 13.) At the hearing, the following occurred:
“THE COURT: Now, [the State] is here. [Defense counsel] is here and [G.V.C.] ... is here, bring him out. Now, you know here, we even have the instigator of all this here. We tried the case for sex abuse, we charged on sex abuse, y’all argued on sex abuse and I feel like it was a typographical error that the verdict form said sexual assault, and that’s wrong.
“[Defense counsel]: Yes, sir.
*670 “THE COURT: Now, I think that Rule 29, Rules of Criminal Procedure, allows me to correct that but I want to hear from you, if you disagree or object, which I’m sure you do, and I’ll hear from [State’s attorney] and then I will make my decision.”
“[Defense counsel]: Yes, sir, Judge. We would object to changing the verdict form. When the jury went back they had a sexual assault first degree, that’s what they were looking at and that’s what they had to have discussed was sexual assault. They didn’t come out and ask a question why did you charge us on this and give us this verdict form, they didn’t do that. They just simply returned the verdict form. I think it’s very misleading because assault is different from abuse and the jury but of course anybody can understand an assault. Sexual abuse you might have to explain that but sexual assault you wouldn’t. So I would object to changing the verdict form at this late date and ask the Court for a new trial.
“THE COURT: I know. And I see exactly — I think we all see what has happened here, we all see there is a real issue here—
“THE COURT: — -and it will be probably be resolved by higher authority. So I’m going to allow the amendment. [State’s attorney], I want you to prepare a short order for me to sign and be sure and let [defense counsel] see it and when he says it’s okay then I’ll sign it. Then we’ll have the sentencing which is sometime that’s when we’ll see what we’re going to do and then we will take it up from there. Thank you both very much.”
(R. 195-96,199-200.)
Following the hearing, the trial court entered the following written order:
“The above-styled case came for trial on November 16, 2011, [G.V.C.] having been duly indicted and arraigned on the charge of Sex Abuse in the 1st Degree. The State of Alabama ... and [G.V.C.] ... presented evidence as to Sex Abuse in the 1st Degree. The respective parties did their respective closing arguments as to the charge of Sex Abuse in the 1st Degree. The Court instructed the jury on the charge of Sex Abuse in the 1st Degree. However, due to a mistake or inadvertence, the verdict form provided to the jury gave the jury the option of finding the defendant guilty or not guilty of ‘sexual assault in the 1st degree.’ The jury returned the verdict of guilty of ‘sexual assault in the 1st degree.’ When polled, each member of the jury confirmed that was their verdict.
“Notice of the clerical error was made to the State and [G.V.C.’s] Counsel. The Court notified the State and [G.V.C.’s] Counsel of its intention to correct the verdict form pursuant to [Rule 29, Ala. R.Crim. P.,] in open court on November 29, 2011.
“The Court, on its own motion, finds that the jury verdict form contained a clerical mistake arising from oversight or omission and must be corrected to conform to the indictment, the evidence, and the jury instructions. The corrected verdict form reads as follows: ‘We the jury find the Defendant, [G.V.C.], guilty of Sex Abuse in the 1st Degree as charged in the indictment.’ ”
(C. 17.)
On appeal, G.V.C. argues that the verdict returned by the jury — finding G.V.C. guilty of “first-degree sexual assault” for which there is no statutory provision in the Code of Alabama 1975 — is a nullity and, *671 further, that the trial court erred when it corrected the verdict form. In response, the State asserts that these issues are not preserved and, further, that these issues are without merit.
The issues presented to this Court relate only to questions of law and thus are reviewed de novo. See Ex parte Lamb, 113 So.3d 686 (Ala.2011).
As a threshold matter, the State asserts that G.V.C.’s appellate claims are not preserved for appellate review. (State’s brief, p. 11.) Our caselaw—although predating Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006) — suggests that the issues presented by G.V.C. on appeal are nonwaiva-ble. See Bradford v. State, 948 So.2d 574, 582-83 (Ala.Crim.App.2006) (sua sponte addressing the propriety of a verdict finding a defendant guilty of “reckless endangerment” when the defendant was actually charged with “reckless driving”); Tinker v. State, 932 So.2d 168, 176 (Ala.Crim.App.2005) (addressing “the issue of the discrepancy between the offense charged ... and the verdict” even though not raised on appeal, because the issue “implicates the jurisdiction of the trial court to pronounce judgment on the verdict”); Pittman v. State, 621 So.2d 351, 352 (Ala.Crim.App.1992) (addressing an improper-verdict-form argument, even though it was not raised when the verdict form was given to the jury, and recognizing that the claim relates to the jurisdiction of the trial court to impose judgment).
Moreover, we note that the trial court sua sponte raised this issue and, thus, that the issues surrounding the verdict form— including the discrepancy issue and the amendment of the verdict by the trial court — were clearly before the trial court. See generally Johnson v. State, 500 So.2d 69, 72 (Ala.Crim.App.1986) (“The primary purpose of objections is not to ‘preserve error’ for appellate review. Their primary purpose is to give the trial court an opportunity to correct that which might otherwise have been error.”).
Nevertheless, because we are affirming, we need not decide whether this issue was preserved or address whether it is non-waivable. Accordingly, we address G.V.C.’s claims.
I.
G.V.C. first argues that the jury verdict returned in this case — convicting him of first-degree “sexual assault” — is a nullity and that he is entitled to a new trial.[1] We disagree.
In Edwards v. State, 570 So.2d 252, 252-54 (Ala.Crim.App.1990), Edwards was indicted and tried on two counts of distribution of marijuana; the verdict forms submitted to the jury, however, allowed only a guilty or not-guilty finding on the offense of “possession of marijuana,” which, in that case, was not a lesser-included offense. The jury returned guilty verdicts, and Edwards was subsequently adjudicated guilty and was sentenced on the verdicts; Edwards then appealed.
After noting that the verdict and indictment “impermissibly varied” and, further, *672 after discussing the indictment and lesser-included offenses, this Court stated:
“ ‘The verdict in a criminal case must be responsive to the offense charged in the indictment, but surplusage can be disregarded if the intent of the jury is clear. A jury verdict will be held to be sufficient if its meaning can be reasonably ascertained from the words used. Where the error in the charge is in the form of the verdict and there is not prejudice to the rights of the accused the error is harmless.’ ”
Edwards, 570 So.2d at 253-54 (quoting Peterson v. State, 508 S.W.2d 844, 849 (Tex.Crim.App.1974)). This Court, applying the language from Peterson — that a jury verdict is sufficient when its meaning can be reasonably ascertained from the words used in a verdict form and, further, that, where there is no prejudice to the rights of the accused, any error is harmless — stated:
“In the present case, the jury’s verdict was not responsive to the offense charged in the indictment and the jury’s intent is not clear; therefore, the language stating that the appellant was found guilty of ‘possession of marijuana’ cannot be held to be surplusage.”
Edwards, 570 So.2d at 254. Following this analysis, this Court concluded by holding:
“Because [Edwards] was charged with the unlawful sale of a controlled substance but was convicted, pursuant to the jury verdict forms, of the possession of marijuana, where the latter could not be a lesser included offense of the former, the judgment is due to be reversed and the cause remanded for a new trial.”
570 So.2d at 254.
G.V.C. reads Edwards for the proposition that “where the offense erroneously judged upon cannot be construed as a lesser-included offense, judgment is due to be reversed” and asserts that, in this case, “[a] conviction based upon the verdict form notation of ‘Sexual Assault First Degree’ cannot be conceived as a lesser-included offense of ‘Sexual Abuse First Degree,’ because the offense doesn’t exist.” (G.V.C.’s brief, p. 11.) We do not read Edwards so broadly.
Edwards does not, as G.V.C. asserts, stand solely for the proposition that “when an offense cannot be contemplated as a lesser-included offense of the former, the judgment is due to be reversed.” (G.V.C.’s brief, p. 12.) Although this Court held that Edwards’s conviction for possession of marijuana could not stand when it was not a lesser-included offense, this conclusion was reached only after this Court applied the language in Peterson regarding harmless error and discerning the intent of the jury from its verdict.
In Pittman, 621 So.2d 351, 352 (Ala.Crim.App.1992), the defendant argued on appeal that he was entitled to a new trial because of an improper verdict form. In that case, Pittman was charged with attempted murder, and, at the conclusion of trial, the trial court charged the jury on both “attempted murder” and the “intent to commit murder.” Id. “The verdict form submitted to the jury[, however,] contained a charge of ‘intent to commit murder’ rather than ‘attempted murder.’ ” Id. The jury returned a guilty verdict on the “intent to commit murder” verdict form, and, after attempting to correct the discrepancy, the trial court entered a judgment of conviction against Pittman. Pittman, 621 So.2d at 352.
This Court held that “the [trial] court was without jurisdiction to pronounce judgment on the verdict finding the defendant guilty of ‘intent to commit murder’ ” because, “[although ‘intent’ to commit a crime is a necessary element within any ‘attempt’ statute, it is not, in and of itself, a *673 crime to possess intent.” 621 So.2d at 352-53. The Pittman Court appeared to be concerned that, by allowing a conviction on the guilty verdict for “intent to commit murder,” the trial court had “modified], ehange[d], or alter[ed] the statutes of the State of Alabama.” 621 So.2d at 352 (internal quotation marks omitted).
According to G.V.C.’s reading of Pittman, “[t]his Court held that where there were some analogous elements between the indictment and the erroneous listed offense, it was not in and of itself, a crime” and “[h]ence, the court was without jurisdiction to pronounce judgment on the verdict finding the defendant guilty of ‘intent to commit murder.’ ” (G.V.C.’s brief, p. 14.) We agree with this reading of Pittman, but we disagree that it is applicable to G.V.C.’s case.
This Court in Pittman concluded that the trial court was without jurisdiction to enter a judgment on a verdict where the verdict was nothing more than a finding of guilty of an element of the charged offense; as the Pittman Court noted, the trial court may not change the law and convict a defendant on less than the required statutory elements. In this case, however, we have no such issue. Unlike the defendant in Pittman, the jury in this case did not return a verdict on a mere element of the offense.[2]
As Edwards recognized, this Court reviews the intent of the jury to determine the sufficiency of the jury’s verdict. In Tinker, Tinker was charged with conspiracy to traffic in cocaine; the verdict forms, however, allowed only a guilty or not-guilty decision on trafficking in cocaine. 932 So.2d at 175-76. The jury returned a guilty verdict, and Tinker was adjudicated guilty and was sentenced based on the verdict; Tinker then appealed.
In our opinion reversing Tinker’s conviction, this Court, relying on Edwards and Pittman, concluded:
“[Although the trial court’s charge to the jury properly contained an instruction regarding trafficking in cocaine in order to assist the jury in determining whether Tinker was guilty of conspiracy to traffic in cocaine, it is conceivable that a layperson on the jury could have easily construed the instructions as requiring the jury to determine whether Tinker was guilty of trafficking in cocaine, especially since the verdict form provided to the jury gave the jury two choices on count 1 — that the jury could find Tinker either guilty or not guilty of ‘trafficking cocaine, as charged in count one of the indictment.’ Thus, under the facts of this case, the jury’s intent is unclear.”
Tinker, 932 So.2d at 177 (emphasis added). Accordingly, because the intent of the jury was not clear from the verdict form, this Court reversed Tinker’s conviction and his sentence. Tinker, 932 So.2d at 178.
In Bradford — a case G.V.C. does not acknowledge or address — this Court applied Tinker to address a verdict-form-diserepancy issue. 948 So.2d 574 (Ala.Crim.App.2006). In that case, Bradford was indicted for, among other things, reek- *674 less driving; throughout trial, however, the charge was referenced nearly exclusively as “reckless endangerment,” a different offense.[3] Id. at 581. Notably, the jury charge — although providing the correct statute — referenced the crime as “reckless endangerment,” and the jury-verdict form referenced “reckless endangerment” instead of “reckless driving.” Id. at 581-82.
On appeal, Bradford argued that his one-year sentence for reckless driving exceeded the statutory maximum and that his sentence was therefore illegal; this Court addressed the verdict-form-discrepancy issue to establish whether Bradford was convicted of reckless endangerment— which would permit a one-year sentence— or of reckless driving — for which the punishment may not exceed six months.[4] Regarding the discrepancy, this Court concluded that the intent of the jury was clear, stating as follows:
“The jury was never instructed on the elements of reckless endangerment, as set out in § 13A-6-24, Ala.Code 1975.... Rather, the jury was instructed only, on the elements that constitute the offense of reckless driving, i.e., the offense for which Bradford was indicted. Thus, the erroneous reference on the verdict form to the charge as reckless endangerment does not draw the jury’s intent into question, because the jury could not have found Bradford guilty of an offense as to whose elements it had not been instructed. Clearly, the jury in this case found Bradford guilty of violating § 32-5A-190, Ala.Code 1975, because those were the only elements given in that charge.”
Bradford, 948 So.2d at 582-83.
Unlike Tinker, where the intent of the jury was unclear, the facts in this case indicate that, “[cjlearly, the jury in this case found [G.V.C.] guilty of violating § [13A-6-66], Ala.Code 1975, because those were the only elements given in that charge.” Bradford, 948 So.2d at 583.
Regarding this jury-intent analysis, G.V.C. asserts only that “a verdict explanation would require some clarification on the part of the jury, thereby rendering their intent unclear.” (G.V.C.’s brief, p. 13.) We disagree. Here, the sole issue charged in the indictment was first-degree sexual abuse, and there was no lesser-included offense to confuse the jury; the sole issue discussed by the judge and attorneys at trial was first-degree sexual abuse; the jury was charged without objection on first-degree sexual abuse; the trial court informed the jury that it would be returning a verdict on first-degree sexual abuse; and, finally, the verdict form and the indictment differed by only one word. In light of these facts, we conclude that the intent of the jury’s guilty verdict — which was limited to a single issue clearly presented to the jury — is clear.
II.
As discussed above, the trial court, following a hearing, corrected the jury’s verdict to reflect its intent. G.V.C. argues, however, that the trial court was without authority to do so.[5] We disagree.
*675 As a threshold matter, we question whether the jury-verdict form needed to be corrected. In Edwards, this Court clearly recognized that “ ‘[a] jury verdict will be held to be sufficient if its meaning can be reasonably ascertained from the words used. Where the error in the charge is in the form of the verdict and there is not prejudice to the rights of the accused the error is harmless.’ ” Edwards, 570 So.2d at 253-54 (quoting Peterson, supra). In Bradford, the trial court entered judgment on the jury-verdict form reading “reckless endangerment,” instead of “reckless driving.” Bradford, supra. According to this logic, as well as the holding of Edwards, subsequent judgment on an imperfect verdict form that nonetheless clearly evidences the intent of the jury is acceptable; to hold otherwise would call into question the necessity of assessing “intent” in jury-verdict-discrepancy issues. See Tinker, 932 So.2d at 177 (“Thus, under the facts of this case, the jury’s intent is unclear.”) Accordingly, any error in correcting the verdict form to read “abuse” instead of “assault” was harmless, because the trial court could have entered a judgment without making that correction. Rule 45, Ala. R.App. P.
Regarding clerical mistakes, the Alabama Rules of Criminal Procedure state:
“Clerical mistakes in judgments, orders, or other parts of the record, and errors arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be so corrected by the trial court.”
Rule 29, Ala. R.Crim. P.
“The committee comments to Rule 29 state that Rule 29 is taken directly from Rule 60(a), Ala. R. Civ. P. Because Rule 29 is taken directly from Rule 60(a), Ala. R. Civ. P., cases construing Rule 60(a) should be examined to determine the proper construction to be placed on Rule 29. See H. Maddox, Alabama Rules of Criminal Procedure, § 29.1, p. 919 (2d ed.1994).”
Dollar v. State, 687 So.2d 209, 210 (Ala.1996).
“The term ‘clerical errors’ is not limited solely to errors by the clerk in transcription. It can also include errors by others, such as & jury foreman, counsel, a party, or the judge himself” Continental Oil Co. v. Williams, 370 So.2d 953, 954 (Ala.1979), overruled on other grounds, Ex parte Cincinnati Ins. Cos., 806 So.2d 376 (Ala.2001).
G.V.C. argues, however, “a clerical error under the law cannot be one that involves judicial reasoning, a mistake of fact, or a modification of an original judgment” and that “to change a jury’s verdict, whether in written or oral form, is unavoidably a substantial change, not a mere correction of a clerical mistake.” (G.V.C.’s brief, pp. 10- *676 11.) In support of this argument, G.V.C. relies on Ex parte Lamb, supra.
In Ex parte Lamb, the trial court attempted to formally adjudicate guilt on the jury’s verdict, at which point the trial court “noticed that the verdict form for count II ... was signed by the jury foreman as ‘not guilty’ — as opposed to what the foreman had orally announced in open court— ‘guilty.’” 113 So.3d at 687-88. Following this discovery, the trial court attempted to reassemble the discharged jury, and, although the trial court was able to find only 7 of the 12 jurors, the trial court instructed the foreman to “correct” count two from “not guilty” to “guilty.” Id. at 689. The trial court then entered judgment on the revised verdict.
Addressing this issue, the Alabama Supreme Court stated:
“Undertaking to change a jury’s verdict, whether in written or oral form, is unavoidably a substantial change, not a mere correction of a clerical mistake, and such a change should have been noticed, altered, and entered on the record before the jury was discharged, the moment that ‘ends [its] consideration of the case.’ [Preferred Risk Mut. Ins. Co. v. Stuart, 395 So.2d 980, 986 (Ala.1981) ](citing [St. Clair v. Caldwell & Riddle, 72 Ala. 527 (1882)]). It is clear from the record that the trial court was not making this correction pursuant to Rule 29, Ala. R.Crim. P., because Rule 29 allows the court to make such a correction ‘at anytime of its own initiative.’ Rather, the trial court recalled seven of the discharged jurors, inquired of their intent on the record, re-polled them as to the verdict, and requested that the jury foreman make the necessary correction on the verdict form for count II.”
113 So.3d at 690.
The facts underlying Preferred Risk Mutual Insurance Co. v. Stuart, 395 So.2d 980 (Ala.1981), a case relied upon heavily by the Alabama Supreme Court in Ex parte Lamb, are quite similar. In Preferred Risk, the jury returned a verdict in favor of the plaintiffs, and the jury was discharged. 395 So.2d at 984. Following this verdict, the plaintiffs attorney spoke with one of the jurors regarding the verdict and relayed his conversation to the trial court; the trial court subsequently reempaneled the discharged jury. 395 So.2d at 983. Once reempaneled, the trial court discussed the verdict with the jury, and the jury relayed to the trial court that there was a misunderstanding. Preferred Risk, 395 So.2d at 983-84. The jury indicated that it wished to reconsider its verdict, and the trial court permitted additional deliberation; following deliberation, the jury again returned a verdict in favor of the plaintiffs but included additional damages. Id. at 986.
In both Preferred Risk and Ex parte Lamb, the Alabama Supreme Court expressed an overarching concern regarding the discharge and subsequent reempanel-ing of the jury, along with the appearance of impropriety; specifically, in Ex parte Lamb, the Alabama Supreme Court stated:
“A critical concern raised by a jury’s discharge, later recall, and subsequent rendering of a second verdict is the possibility that ‘ “any outside influence” ’ could be brought to bear on the jurors or the jurors could be ‘ “communicated with or tampered with by any person” ’ during the ‘ “very few minutes that transpired between the time of discharge and recall.” ’ Preferred Risk, 395 So.2d at 988 (quoting Masters v. State, 344 So.2d 616, 619 (Fla.Dist.Ct.App.1977)).
“At Lamb’s trial, the jury was outside the courtroom and outside the presence *677 and supervision of any officer of the court for a few minutes between its discharge and the recall. Additionally, five members of that jury were completely unavailable and did not participate in that recall. Even if this Court were to somehow overlook the possibility of taint once this jury was formally discharged and beyond the presence and supervision of the court, a significant concern remains that five members of the discharged jury were not available to attempt to correct the inconsistent verdicts.
“An additional concern raised by the facts of this and similar cases, as this Court discussed in Preferred Risk, is the appearance of impropriety. 395 So.2d at 987. The integrity of jury verdicts and their acceptance by the society governed by them are ‘at the very root and branch of the jury system itself.’ 395 So.2d at 987. What is before us — a correction to inconsistent verdicts on a single count of an indictment by seven members of a discharged jury who had been beyond the presence and supervision of the court — certainly appears improper.”
Ex parte Lamb, 113 So.3d at 691.
Furthermore, the Alabama Supreme Court in Ex parte Lamb noted that there were double-jeopardy concerns in that case. See Ex parte Lamb, 113 So.3d at 690 (“Further, because it was a civil action, Deramus [Hearing Aid Center, Inc. v. American Hearing Aid Associates, Inc., 950 So.2d 292 (Ala.2006)], was not affected by double-jeopardy concerns. In the present case, the only entity authorized at law to determine the verdict as to count II of the indictment charging Lamb was the jury. At the moment the jury was discharged, the record contained a written verdict form stating the jury had found Lamb ‘not guilty as to count II and the trial court had polled the jurors, who indicated that they had rendered a guilty verdict as to that same count.”).
This case, unlike Ex parte Lamb and Preferred Risk, does not involve a substantive change to the jury verdict but, instead, involves the trial court’s correcting the verdict form to read “abuse” instead of “assault”; the jury was not reempaneled, and the jury did not return an additional or different verdict from the verdict originally announced. Here, the jury returned a “guilty” verdict against G.V.C. on the only issue that was before it, and its intent was clear from the verdict form, despite the fact that the jury-verdict form contained the word “assault” instead of “abuse”; likewise, because this matter involves only a guilty verdict on the only offense at issue in the case and the only offense on which the jury was charged, there are no double-jeopardy implications.[6] To hold otherwise would be to overrule Edwards and its progeny, which no one has asked us to do, and which is not, from our reading, overruled by Ex parte Lamb.
For the foregoing reasons, we affirm the judgment of the circuit court.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. G.V.C. first argues that he "was deprived of his constitutional-due-process rights to be tried and convicted on the offense cited in the indictment.” (G.V.C.’s brief, p. 6.) In support of this argument, G.V.C. relies exclusively on Gayden v. State, 262 Ala. 468, 469, 80 So.2d 501, 502 (1955). Gayden, however, addresses the sufficiency of an indictment charging controlled-substances crimes; G.V.C., however, is not truly challenging the sufficiency of his indictment — in fact, for all that appears, he has never challenged the sufficiency of the charging instrument — but instead, he is challenging the wording of the jury-verdict form. Although G.V.C. quotes Gayden for a broad proposition of law, it is inapposite to the outcome of this case, and we do not address it.

. G.V.C. also relies on Franklin v. State, 23 So.3d 694 (Ala.Crim.App.2008), in support of reversal of his conviction. (G.V.C.’s brief, p. 15.) In Franklin, this Court addressed a verdict-discrepancy claim. 23 So.3d at 697. The portion of that opinion addressing the verdict-discrepancy claim — II.B.—received no concurring votes, and the four votes concurring in the result — which included two special writings — offered differing rationales for reversal on that claim. See Franklin, 23 So.3d at 705. Accordingly, any reliance on Franklin — with respect to the verdict-discrepancy claim — is misplaced. See generally Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala.2001) ("The precedential value of the reasoning in a plurality opinion is questionable at best.”).

.See § 13A-6-24, Ala.Code 1975 ("A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.”). Reckless endangerment is a class A misdemeanor.

. See §§ 13A-5-7 and 32-5A-190, Ala.Code 1975.

. G.V.C. also argues that "the trial court in the instant case failed to act responsibly to maintain the integrity of the jury trial process.” (G.V.C.’s brief, p. 15.) In support of this assertion, G.V.C. relies on Allen v. State, *675 52 Ala. 391 (1875), for the proposition that "it is the duty of the trial court, and the prosecuting officer, to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court, to create embarrassments afterward and perhaps the necessity of a new trial.” (G.V.C.'s brief, p. 16.) Further, G.V.C. asserts that "[t]he appearance of a verdict that was entered to an offense that doesn't exist in code law is an inexcusable error” and that "the appearance of impropriety that a judge could alter a verdict without contact or input from the jury undermines the very basic foundation that any defendant would expect from the jury system.” (G.V.C.'s brief, p. 16.)
Other than quoting Allen for broad propositions of law, G.V.C. fails to address the facts of Allen, and, although he argues that he is entitled to reversal based on Allen, G.V.C. fails to provide any rationale for this position. Accordingly, this argument is without merit.

. For this same reason, this case is distinguishable from Ex parte T.D.M., 117 So.3d 933 (Ala.2011). In Ex parte T.D.M., a jury announced the defendant guilty of first-degree sexual abuse and not guilty of sodomy. 117 So.3d at 934. After the jury was discharged, the trial court discovered that the not-guilty verdict on the sodomy charge was not the intent to the jury. 117 So.3d at 934. The trial court then reassembled the jury, and the jury was allowed to amend its verdict. 117 So.3d at 934. As stated above, in this case, the jury clearly returned a guilty verdict on the sole issue before it.