IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,817

STATE OF KANSAS,
*Appellee*,

v.

AARON ROBERT BROWN,
*Appellant.*

SYLLABUS BY THE COURT

1.

An ambiguous verdict can be reasonably interpreted in light of the charging document, the jury instructions, and the record as a whole to determine and give effect to the jury's intent.

2.

When such intent is clear, a mistaken description of the crime of conviction contained in the verdict form may be discarded as surplusage when the verdict form also refers to the correct charge by pointing back to the charging document or the jury instructions.

3.

There is a strong presumption in favor of the literal text of the jury verdict as the surest guide to the jury's intentions. That presumption can only be overcome when the record as a whole clearly demonstrates a different intent and the district court is convinced beyond a reasonable doubt that portions of the verdict text are inconsistent with that intent.

1

4.

Appellate courts will review a district court's application of the surplusage rule de novo.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 3, 2017. Appeal from Cowley District Court; JAMES T. PRINGLE, judge. Opinion filed June 5, 2020. Judgment of the Court of Appeals affirming in part, reversing in part, and vacating in part the judgment of the district court is reversed. Judgment of the district court is affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, was on the brief for appellant, and *Aaron Robert Brown,* appellant pro se, was on the petition for review.

*Ian T. Otte*, deputy county attorney, and *Derek Schmidt*, attorney general, was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Aaron Robert Brown shot Robert Lolar eight times, but Lolar survived. The detailed facts surrounding the incident were recited by the Court of Appeals. *State v. Brown*, No. 115,817, 2017 WL 5016171, at *1-2 (Kan. App. 2017) (unpublished opinion). But they do not need to be repeated here as we are confronted with a narrow and purely legal question on review of that decision.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Brown with attempted second-degree intentional murder. At trial, Brown claimed he acted in self-defense because Lolar was threatening him. The district court instructed the jury on attempted second-degree intentional murder, the lesser offense of attempted voluntary manslaughter (imperfect self-defense), and self-defense.

However, the verdict form mistakenly said: "We, the jury, find the defendant guilty of the lesser offense of attempted *involuntary* manslaughter as set forth in Instruction No 7." (Emphasis added.) Instruction No. 7 referred to the correct crime of attempted voluntary manslaughter. Thus, the verdict was internally inconsistent. Nobody caught this error until sentencing, long after the jury was discharged. The Cowley County District Court sentenced Brown for the instructed crime, attempted voluntary manslaughter.

The Court of Appeals reversed Brown's conviction for attempted voluntary manslaughter and remanded for a new trial on that count. The panel held that the district court erred when it corrected the verdict error. 2017 WL 5016171, at *5. On strikingly similar facts, another panel of the Court of Appeals came to a different conclusion, holding a district court could reasonably interpret the verdict in light of the record. See *State v. Rice*, No. 103,223, 2011 WL 4031494, at *11 (Kan. App. 2011) (unpublished opinion).

This court granted the State's petition for review to resolve a panel split between *Brown* and *Rice*. Brown dismissed his appellate defender and proceeds pro se.

ANALYSIS

Here, the panel reversed Brown's attempted voluntary manslaughter conviction because of the verdict form error and remanded for a new trial on that charge. *Brown*, 2017 WL 5016171, at *1. The panel began its opinion by declaring: "Courts have to treat completed jury verdict forms in a criminal case as saying what they mean and meaning what they say. . . . [C]ourts cannot take it upon themselves to unilaterally fix ostensibly errant verdicts." 2017 WL 5016171, at *1. Thus, the lower court held that the written language of the verdict must control and the district court is powerless to deviate from its literal meaning.

3

The panel admitted that "[h]ow to categorize the defect—as a technical flaw or as something more—isn't entirely obvious." 2017 WL 5016171, at *3. But, it concluded, "Whether the problem is classified as one of formality or one of substance, the district court could not have purported to fix it after the jury had been discharged." 2017 WL 5016171, at *3.

The panel reasoned that, on the one hand, if the verdict was "defective in form only," then the district court only had statutory authority under K.S.A. 22-3421 to "correct" it with the jury's assent—not on its own volition. K.S.A. 22-3421; 2017 WL 5016171, at *3-4. As K.S.A. 22-3421 states: "If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged." On the other hand, if the verdict contained a substantive error, then it should be treated like "inconsistent verdicts" that are sent back to the jury for resolution. 2017 WL 5016171, at *3. The panel cited *State v. Hernandez*, 294 Kan. 200, 202-07, 273 P.3d 774 (2012), to support its "inconsistent verdict" theory, which held: "When a jury, contrary to the court's instructions, finds a defendant guilty of both the completed crime and an attempt of the same crime, it is the duty of the trial court to order the jury to reconsider and correct its verdict." 294 Kan. 200, Syl. ¶ 2.

Thus, the *Brown* panel concluded the district court erred when it corrected the verdict to attempted voluntary manslaughter, analogizing the correction to a directed verdict. *Brown*, 2017 WL 5016171, at *4. In so holding, the panel acknowledged that "an obvious typographical error doesn't demand judicial concern or attention . . . [b]ut reconciling a conflict between the actual crime of conviction in the verdict form and the crimes presented in the instructions is of an entirely different scope." 2017 WL 5016171, at *5. The panel emphasized that "[a]ny judicial reconciliation after the jury has been discharged amounts to a guess." 2017 WL 5016171, at *5.

4

In closing, the *Brown* panel was forthright that "[a]nother panel of this court came to a different conclusion on similar facts in *State v. Rice* . . . a decision upon which the district court relied heavily." *Brown*, 2017 WL 5016171, at *4. But the *Brown* panel openly disagreed with *Rice*, stating:

> "We don't believe a district court or an appellate court can tamper with a completed verdict form to change the crime of conviction no matter how obvious the purported error by the jury might be. The prerogative to revise belongs to the jury and expires when the jury has been discharged. At that point, the judicial corrective is limited to a new trial." 2017 WL 5016171, at *5.

The *Rice* panel, however, reasoned that it is the jury's intent rather than the literal words on the verdict form that controls, and a district court may reasonably interpret the verdict form to give effect to the jury's intent. In *Rice*, "the jury was informed about the elements of aggravated indecent liberties [with a child], as charged in the information, but the verdict form mistakenly referred to the crime charged as indecent liberties with a child." *Rice*, 2011 WL 4031494, at *2. On appeal, the defendant argued his sentence for aggravated indecent liberties was illegal because the verdict form said indecent liberties. As here, the jury was polled and affirmed the verdict, and nobody caught the error until sentencing. Ultimately, the district court sentenced the defendant for aggravated indecent liberties because "'there was no confusion by anyone and the jury could only have found the elements'" of aggravated indecent liberties. 2011 WL 4031494, at *9.

At the outset, the *Rice* panel recognized that the defendant "could not be convicted of indecent liberties because, as a general rule, '[a] defendant may not be convicted of a crime with which he was not charged.'" 2011 WL 4031494, at *10 (quoting *Harris v. State*, 288 Kan. 414, 417, 204 P.3d 557 [2009]). But the *Rice* court treated the question as one of interpretation, asking, "[W]hat crime did the jury find Rice guilty of—aggravated indecent liberties or indecent liberties?" 2011 WL 4031494, at *11. To answer this, the panel turned to the surplusage rule: "'A verdict can be properly interpreted by reference

5

to the information, to the court's instructions and to the record; surplusage may be disregarded when the jury's verdict is otherwise responsive to the charge.'" (Emphasis removed.) 2011 WL 4031494, at *11 (quoting *State v. Taylor*, 212 Kan. 780, Syl. ¶ 1, 512 P.2d 449 [1973]). In *Taylor*, we held that "a verdict may be upheld when it simply states the defendant is found guilty as charged in the information, any surplus verbiage may be disregarded." 212 Kan. at 783. Notably, the *Taylor* court labeled a misstated crime on the verdict form as "surplusage." 212 Kan. at 783.

Applying the surplusage rule, the *Rice* panel held the jury intended to find the defendant guilty of aggravated indecent liberties for four fact-specific reasons:

> "First, the crime of indecent liberties was never at issue during the trial. Second, the crime of aggravated indecent liberties was the only crime ever mentioned or referenced with regard to Count II. Third, the jury was specifically instructed—on two separate occasions—to consider whether the State had proven the elements of aggravated indecent liberties in Count II. The elements instruction for Count II properly set forth the elements for aggravated indecent liberties. Fourth, although the verdict form did not have the adjective 'aggravated' in the name of the crime, the form properly described the count wherein the crime was charged, and this crime was repeatedly identified throughout the trial as aggravated indecent liberties. In summary, our conclusion is the result of considering the verdict form itself, the second amended complaint, the trial court's instructions, and the trial record. See *Taylor*, 212 Kan. 780, Syl. ¶ 1." *Rice*, 2011 WL 4031494, at *12.

Finally, the *Rice* panel held that K.S.A. 22-3421, the defective verdict form statute, did not apply to the facts before it. The panel believed that K.S.A. 22-3421 created a procedure for fixing "scrivener's error[s]," but the verdict error here did not fall under that umbrella. 2011 WL 4031494, at *14. Thus, the *Rice* panel affirmed the defendant's sentence for aggravated indecent liberties. 2011 WL 4031494, at *15.

In sum, both *Brown* and *Rice* involved a charging document and relevant jury instruction charging and accurately describing one crime, but a verdict form naming another, similar-sounding crime. In both cases, the verdict form itself was the mistake—the jury did not write in a new crime or otherwise alter the verdict form. The district court and the parties missed the mistake until sentencing, when the jury had long been dismissed. Both panels agreed that the defendant could not be convicted of a crime he was not charged with, but they resolved the discrepancy between the verdict form and the rest of the case—the charging document, the evidence and arguments presented, and the elements instructions—in opposite ways. The *Brown* panel took a strict textualist approach which considers the verdict form's literal language as sacrosanct. The *Rice* panel took an interpretative approach which considers the jury's intent as paramount.

Today we side with the approach taken by the *Rice* panel and reverse the lower court's decision here—though we do so with caution. Historically, we have followed the general rule that when a verdict is ambiguous, the district judge may reasonably interpret the verdict using the charging document, the jury instructions, and the record as a whole. See *State v. Doolittle*, 153 Kan. 608, Syl. ¶ 1, 113 P.2d 94 (1941) ("In determining the sufficiency of and in interpreting the verdict in a criminal case, the court may make use of anything in the record that tends to show with certainty what the jury intended."); *Hodison v. Rogers*, 137 Kan. 950, Syl. ¶ 1, 22 P.2d 491(1933) ("An ambiguous verdict in a criminal case is entitled to a liberal interpretation, and reference may be had to the court's instructions, to the forms of verdict submitted, and to the record to determine its meaning and certainty."); *In re Mooney*, 89 Kan. 690, 693, 132 P. 217 (1913) ("'A verdict is not bad for informality if the court can understand it. It is to have a reasonable intendment, and is to receive a reasonable construction, and must not be avoided except from necessity.'"); *In re McLean*, 84 Kan. 852, 855, 115 P. 647 (1911) ("The information may be looked to as a matter of course to interpret the verdict.").

7

For example, in *Mooney* the defendant was charged with one count of "committing burglary and larceny by breaking into a freight car and stealing goods therein." *Mooney*, 89 Kan. at 691. At the time, a statute permitted burglary and larceny to be charged in the same count. 89 Kan. at 691. The verdict found the defendant "guilty of the offense of burglary and larceny, as charged in the information," but oddly, also found him not guilty of burglary and larceny separately. 89 Kan. at 691. On appeal, the defendant argued the verdict was either not guilty or void. This court disagreed, saying, "Any difficulty in understanding what the jury really meant by the verdict, when it alone is considered, disappears when it is read in connection with the instructions." 89 Kan. at 691.

In *Mooney*, the district court had instructed the jury on three offenses, which were mirrored on the verdict form: "(1) Burglary and larceny combined; (2) burglary without larceny; and (3) mere larceny." 89 Kan. at 691. This court interpreted the verdict in light of the charging document and instructions and held, "Plainly what the jury meant by their verdict was that . . . he was guilty of the offense which the instructions described as 'burglary and larceny,' and therefore not guilty of burglary without larceny, and not guilty of larceny without burglary." 89 Kan. at 692. In so holding, this court declared:

> "'Verdicts are not to be construed as strictly as pleadings, but are to have a reasonable intendment and to receive a reasonable construction, and are not to be avoided unless from necessity, originating in doubt as to their import, from immateriality of the issue found, or their manifest tendency to work injustice.'" 89 Kan. at 693 (quoting 29 A. & E. Encycl. of L. 1022).

In this line of cases, we have tended to view anything in the verdict form that clearly and obviously contradicts the charging documents, the jury instructions, and the record as a whole, as surplusage. "A verdict can be properly interpreted by reference to the information, to the court's instructions and to the record; surplusage may be disregarded when the jury's verdict is otherwise responsive to the charge." *Taylor*, 212 Kan. 780, Syl. ¶ 1; see *State v. Rice*, 273 Kan. 870, 873, 46 P.3d 1155 (2002); *In re*

8

*Lester*, 128 Kan. 784, 785-86, 280 P. 758 (1929) (interpreting the verdict in light of the charging document and disregarding "surplusage" that did not disturb the verdict's meaning).

Of course this begs the question, what is "surplusage"? Three key cases shed light on this term:  *Lester*; *State v. Whiting*, 173 Kan. 711, 716, 252 P.2d 884 (1953); and *Taylor*. These cases applied the surplusage rule to interpret verdicts that did not match the charging language. And in all three, we upheld the convictions for the crime charged because the verdict referenced the charging document and the record otherwise showed no confusion about the real crime at issue.

In *Lester*, the defendant was charged with knowingly buying and receiving stolen property. But the verdict form said he was guilty of buying and receiving the property that "he knew had been stolen '*in the nighttime*, as charged in the first count of the information.'" (Emphasis added.) 128 Kan. at 785. The defendant later petitioned for habeas relief, claiming the verdict was void because it found him guilty of a crime he was not charged with. Indeed, the charging document did not say the property was stolen *in the nighttime*. 128 Kan. at 785. We rejected the defendant's argument, stating that "the three words 'in the nighttime' included in this verdict are mere surplusage and do not affect the finding or verdict in any particular. Besides, the concluding words, 'as charged in the first count of the information,' make the crime definite and specific by direct reference." 128 Kan. at 785. The court also affirmed the longstanding rule that "'[t]he information may be looked to for the purpose of interpreting a verdict in a criminal case.'" 128 Kan. at 786 (quoting *McLean*, 84 Kan. 852, Syl. ¶ 3).

In *Whiting*, the defendant was charged with lascivious behavior, but "[t]he verdict found the defendant guilty of lewd conduct, 'all in the manner and form charged in the first count of the complaint.'" 173 Kan. at 715. On appeal, the defendant argued the

verdict did not convict him of the offense charged because of this discrepancy. But again, we disagreed, holding:

> "The difference between 'lascivious behavior' and 'lewd conduct' is too fine a distinction. At any rate, there was only one offense charged on this phase of the case. Actually the words 'lewd conduct' in the verdict were surplusage. The verdict would have been good if it had simply found the defendant guilty as charged in the first count of the complaint." 173 Kan. at 715-16.

Finally in *Taylor*, the information charged the defendant with taking property with the "intent to embezzle" it, but the verdict found the defendant "'guilty of grand larceny as charged in the information.'" 212 Kan. at 782-83. The defendant argued that because he was charged under the embezzlement statute, the verdict finding him guilty of larceny was not responsive to the charge. 212 Kan. at 782. This court acknowledged that embezzlement and larceny were separate offenses. But citing *Lester* and *Whiting*, the court held the jury intended to convict the defendant of embezzlement as charged:

> "' The concluding clause, "as charged in the first count of the information," makes the crime definite and specific by direct reference.'
>
> "A verdict can be properly interpreted by reference to the information, to the court's instructions and to the record; surplusage may be disregarded when the jury's verdict is otherwise responsive to the charge. (*In re McLean*, 84 Kan. 852, Syl. 3, 115 P. 647; *Hodison v. Rogers*, 137 Kan. 950, Syl. 1, 22 P.2d 491, 88 A.L.R. 1080; *State v. Doolittle*, 153 Kan. 608, Syl. 1, 113 P.2d 94.) Considering the statute, the information and the court's instructions, it is clear in this case the jury's verdict was responsive to the single charge contained in the information." *Taylor*, 212 Kan. at 784.

In sum, *Lester*, *Whiting*, and *Taylor* held that a verdict stating the defendant is guilty as charged in the information is specific enough, and a verdict's mistaken

description of the crime of conviction is surplusage that may be disregarded when the verdict is otherwise responsive to the charge.

Kansas' surplusage rule is in good company. Most notably, in *Statler v. United States*, 157 U.S. 277, 277, 15 S. Ct. 616, 39 L. Ed. 700 (1895), the U.S. Supreme Court construed an ambiguous verdict using the surplusage rule. In that case, the defendant was charged with "'having counterfeit coin in his possession with intent to defraud certain persons,'" and he only contested the element of intent. 157 U.S. at 277-78. The jury returned a verdict finding the defendant "'guilty in the first count for having in possession counterfeit minor coin'"—the jury did not mention intent. 157 U.S. at 278. On appeal, the defendant argued the jury did not convict him of a lawful crime. The Supreme Court disagreed, stating, "The verdict being general, and not special, any words attached to the finding 'guilty on the first count' are clearly superfluous, and are to be so treated." 157 U.S. at 279.

The Court stated that, dating back to English law, verdicts have been construed as "'the finding of lay people.'" 157 U.S. at 279. That means verdicts "need not be framed under the strict rules of pleading, or after any technical form. Any words which convey the idea to the common understanding will be adequate; and all fair intendments will be made to support it." 157 U.S. at 279. As the Court explained, the words attached to the phrase "'guilty in the first count'" were "obviously superfluous":

> "'To say, therefore, that the defendant is "guilty," or guilty of an offense named which is less than the whole alleged, is sufficient, without adding "as charged in the indictment"; for the latter will be supplied by construction. So, likewise, a general finding of "guilty" will be interpreted as guilty of all that the indictment well alleges. . . . Surplusage in a verdict may be rejected, being harmless, the same as in pleading; and the verdict must be construed as a whole, not in separate parts.' . . .

11

"Reading the verdict here considered by the light of these elementary principles, the words 'for having in possession counterfeit minor coin,' attached to the words 'guilty in the first count,' are obviously superfluous, and striking them from the verdict leaves it in all respects complete, and responsive to the charge." 157 U.S. at 279.

In the end, the Court held, "The record leaves no room for doubt that the words 'for having in possession counterfeit minor coin,' which were attached to the verdict, were merely words identifying the first count, and were not, and could not have been, intended to qualify the verdict of guilty." 157 U.S. at 280.

Other states take a similar approach. A few examples will suffice. In *People v. Camacho*, 171 Cal. App. 4th 1269, 1271, 90 Cal. Rptr. 3d 559 (2009), "[a] verdict form provided to the jury on a charge of robbery mistakenly identified the offense as carjacking," and the jury returned a guilty verdict. The California court reasoned that "[v]iewing the record as a whole, . . . the jury's unmistakable intent was to convict defendant of robbery, as charged in count 2, and the clerical error in the verdict form was surplusage that may be disregarded." 171 Cal. App. 4th at 1272. The court found the jury's intent was "unmistakable" because "every stage of this case identified the offense as robbery—the charging document, the opening statement, arguments of counsel, and the jury instructions." 171 Cal. App. 4th at 1271.

In *State v. Imhoff*, 78 Wash. App. 349, 350, 898 P.2d 852 (1995), the defendant was charged with one count of attempted possession of marijuana with intent to manufacture or deliver, but "[t]he verdict form lacked the word 'attempted.'" 78 Wash. App. at 350. The Washington court upheld the conviction for attempted possession because it was "clear that the jury regarded the omission of 'attempted'" from the verdict as an oversight. 78 Wash. App. at 350. The court reasoned:

"In reviewing instructions we must read them as a whole, not in isolation from each other. . . . Based on the instructions, the only crime the jury could have possibly

12

convicted Imhoff of was attempt to possess a controlled substance with intent to manufacture or deliver. The jury is presumed to follow the court's instructions." 78 Wash. App. at 351.

Third, in *G.V.C. v. State*, 132 So. 3d 668 (Ala. Crim. App. 2013), the defendant was charged with a single count of first-degree sexual abuse, and during trial, the court only instructed on that crime. But then the verdict form mistakenly said: "'We, the jury, find the defendant [G.V.C.] GUILTY of Sexual *Assault* 1st Degree as charged in the indictment.'" 132 So. 3d at 669.

The Alabama Court of Criminal Appeals affirmed that "'"[a] jury verdict will be held to be sufficient if its meaning can be reasonably ascertained from the words used. Where the error in the charge is in the form of the verdict and there is not prejudice to the rights of the accused the error is harmless."'" 132 So. 3d at 675. The court reasoned that the touchstone of the "jury-verdict-discrepancy" was the jury's intent. 132 So. 3d at 675. The court believed that the trial court's correction of the verdict form to read "abuse" instead of "assault" was not a substantive change, and in the end, it held the jury's intent to convict the defendant as charged was clear from the record. 132 So. 3d at 677.

Thus, based on our own caselaw and persuasive decisions from other jurisdictions, we conclude the *Rice* panel's general approach is correct. An ambiguous verdict can be reasonably interpreted in light of the charging document, the jury instructions, and the record as a whole to determine and give effect to the jury's intent. And when such intent is clear, a mistaken description of the crime of conviction contained in the verdict form may be discarded as "surplusage" when the verdict form also refers to the correct charge by pointing back to the charging document or the jury instructions.

13

Having reached this conclusion, the task of clarifying the appropriate standards that apply when a district court is faced with this situation remains. We have not previously articulated a definitive standard. We have described that standard variously:

- "[W]here the defect is not detected and corrected at the time, the sufficiency of the verdict must depend upon whether the court can *certainly say* from it and the information what was the true intent and meaning of the jury." (Emphasis added.) *State v. Wade*, 56 Kan. 75, 76, 42 P. 353 (1895).

- "'Verdicts are not to be construed as strictly as pleadings, but are to have a *reasonable intendment* and to receive a reasonable construction, and are *not to be avoided unless from necessity*, originating in doubt as to their import, from immateriality of the issue found, or their manifest tendency to work injustice.'" (Emphasis added.) *Mooney*, 89 Kan. at 693 (quoting 29 A. & E. Encycl. of L. 1022).

- "'A verdict is not to be construed with the same strictness as an indictment, but it is to be *liberally construed*, and all reasonable intendments will be indulged in its support, and it will not be held insufficient *unless, from necessity, there is doubt as to its meaning*.'" (Emphasis added.) *Mooney*, 89 Kan. at 693.

- "In determining the sufficiency of and in interpreting the verdict in a criminal case, the court may make use of anything in the record that tends to show *with certainty* what the jury intended." (Emphasis added.) *Doolittle*, 153 Kan. 608, Syl. ¶ 1.

- "A person charged with a crime is supposed to be innocent until a verdict, which is the result of a lawfully conducted jury trial, has been found, and which states in language so definite and certain that *different minds can not*

14

*fairly disagree* as to its meaning that he is guilty of such offense." (Emphasis added.) *State v. Braden*, 78 Kan. 576, 582, 96 P. 840 (1908).

- "Considering the [charging] statute, the information and the court's instructions, it is *clear* in this case the jury's verdict was responsive to the single charge contained in the information." (Emphasis added.) *Taylor*, 212 Kan. at 784.

And in *Statler*, the U.S. Supreme Court permitted a deviation from the text of the verdict form only if the "record leaves no room for doubt" that the strict text of the verdict did not accurately reflect the jury's intent. 157 U.S. at 280.

Synthesizing these various descriptions, we hold that a district judge may only invoke the surplusage rule to discard parts of the verdict form that are inconsistent with the jury's intent as follows. First, the district court must start with a strong presumption in favor of the literal text of the verdict form and only move to interpretation when the record as a whole necessarily creates doubt as to its meaning. Secondly, the district court may consider anything in the record that tends to show with certainty what the jury intended. Finally, only if the district court is convinced, beyond a reasonable doubt, that the record as a whole clearly demonstrates the intent of the jury can the court discard contrary surplusage in the jury's verdict. Appellate courts will review a district court's application of the surplusage rule de novo.

Applying this newly articulated standard, we conclude:  (1) the record as a whole necessarily creates doubt as to the meaning of the jury's verdict; (2) aspects of the record demonstrate the jury's intent with certainty; and (3) we are convinced (as was the district court) beyond a reasonable doubt that the jury intended to convict Brown of attempted voluntary manslaughter. Therefore, the district court did not err when it discarded the prefix "in-" from the verdict form as mere surplusage.

15

In reaching this decision, we have considered the following portions of the record as decisive:

- The crime of attempted *involuntary* manslaughter was never at issue during trial.

- Defense counsel requested an "attempted voluntary manslaughter" instruction, and his proposed verdict form said the same.

- Instruction No. 7 correctly named the lesser included offense of "attempted voluntary manslaughter" and listed its elements.

- Instruction No. 11 correctly summarized the verdict options and stated "attempted voluntary manslaughter" as the lesser included offense.

- The district court correctly read the instructions to the jury, including Instructions No. 7 and No. 11.

- Until closing argument, the court and parties only mentioned "attempted voluntary manslaughter" on the record.

- During closing argument, defense counsel mistakenly said "attempted *involuntary* manslaughter" but the district court instantly corrected him, saying, "Excuse me, you said 'involuntary.' You meant 'voluntary.'" Defense counsel thanked the court and said, "I meant 'voluntary.'"

16

- The verdict form referred to the correct jury instruction: "We, the jury, find the defendant guilty of the lesser offense of attempted involuntary manslaughter as set forth in Instruction No. 7."

We do not take the decision to discard portions of the jury verdict as surplusage lightly and pause here to emphasize again the strong presumption in favor of the literal text of the jury verdict as the surest guide to the jury's intentions. That presumption can only be overcome when the record as a whole clearly demonstrates a different intent and the district court is convinced beyond a reasonable doubt that portions of the verdict text are inconsistent with that intent.

Reversed.

NUSS, C.J., not participating.
CONSTANCE M. ALVEY, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Alvey was appointed to hear case No. 115,817 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.